David M. Poore, SBN 192541
Scott A. Brown, SBN 177099
BROWN | POORE LLP
1350 Treat Blvd., Suite 420
Walnut Creek, California 94597
Telephone:     (925) 943-1166
dpoore@bplegalgroup.com

James Mills, SBN 203783
LAW OFFICES OF JAMES MILLS
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone:     (510) 521-8748
Facsimile:     (510) 277-1413
james@jamesmillslaw.com

Attorneys for Plaintiffs
JOHN GARVEY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GARVEY,<br><br>                    Plaintiffs,<br><br>v.<br><br>SAN FRANCISCO 49ERS, LTD; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE AND/OR INJUNCTIVE RELIEF**<br><br>VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 ET SEQ; VIOLATIONS OF THE FAIR EMPLOYMENT AND HOUSING ACT, GOVERNMENT CODE §12940, ET. SEQ.; WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JOHN GARVEY complains and alleges as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff JOHN GARVEY is, and at all relevant times hereto, has been a resident of the State of California.

2.      Plaintiffs are informed and believe and thereby allege that Defendant SAN FRANCISCO 49ERS, LTD, a limited partnership ("49ers" or "Defendant") is a professional football team with the National Football League ("NFL"), which maintains its principal offices and/or principal place of business in this judicial district in the State of California.

3.      At all relevant times, Defendant 49ers was an employer in the State of California, and, as such, was prohibited from discriminating in the terms and conditions of employment on the basis of any protected category, including the fact that an employee is over the age of 40 years.  Defendant 49ers employed more than 20 full-time employees, and, as such, it was an employer within the meaning of the California Fair Employment and Housing Act ("FEHA"), and the Age Discrimination in Employment Act ("ADEA").

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1367, in that Plaintiff is asserting federal claims, including violations of the ADEA, and the Court has supplemental jurisdiction over Plaintiff's state law claims, in that they arise from the same common nucleus of operative facts.

5.      Venue is proper in the Northern District of California, in that Plaintiff was employed by Defendant 49ers in this judicial district.

6.      Plaintiff is unaware of the true identity, nature and capacity of each of the Defendants designated herein as a DOE, whether individual, corporate, associate or otherwise, who therefore sues such defendants by fictitious names pursuant to California Code of Civil Procedure §474.  Plaintiff is informed and believes and thereby alleges that each of the Defendants designated herein as a DOE is in some manner responsible for the damages and injuries as are alleged in this Complaint.  Upon learning the true identity, nature and capacity of the DOE Defendants, Plaintiff will amend this Complaint to allege their true names and capacities.

7.     Plaintiff has exhausted all administrative remedies with the Department of Fair Employment and Housing ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC") and Plaintiff has received the appropriate and timely right-to-sue letters. The EEOC issued Plaintiff a right-to-sue letter within the past 90 days.  Moreover, at least 60 days has passed since Plaintiff filed his administrative charges with the EEOC, alleging violations of the ADEA.

8.     Unless otherwise indicated as acting in individual capacity, Plaintiff is informed and believe, and thereby allege that each of the Defendants herein were at all times relevant hereto, the agents, representatives, servants and employees of the remaining Defendants, and were acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such Defendants, and each of them.

## **FACTUAL BACKGROUND**

9.     Plaintiff John Garvey is a former employee of Defendant San Francisco 49ers. Defendant hired Plaintiff back in 1999 as a Security Officer.  Plaintiff had an outstanding employment record, and he performed his duties and responsibilities as a 49ers employee in an excellent manner for over 15 years.  Plaintiff was recognized as one of the most reliable and trustworthy security officers with the 49ers, and, towards the end of his career, Plaintiff was selected to guard and protect some of the most valuable property and assets that the team acquired over the years, including the Super Bowl trophies.  Plaintiff was also featured in the documentary about the closing of Candlestick Park, as he was a well-recognized and talented employee who got along well with the coaches, players, staff, and fans.

10.     In 1999, Plaintiff was hired by the then existing Security Director, Fred Formosa.

11.     In early-2011, Plaintiff was informed that Mr. Formosa had elected to leave or retire from the 49ers organization.  At the time, Mr. Formosa was in his early-60s.  Plaintiff later learned that Mr. Formosa was involuntarily terminated from his position by Jed York, the CEO of the 49ers.

12.     In July 2011, Plaintiff attended an "all hands" security meeting at the 49ers' headquarters.  The meeting was run by Jeff Rodriguez, the second in charge of the security

department. During the meeting, one of the security officers asked Mr. Rodriguez about the "elephant in the room," namely, the security officers wanted to know exactly what had happened to Mr. Formosa, the prior Security Director, as he had been with the 49ers' organization for decades. In response, Mr. Rodriguez told Plaintiff and the other security officers that he had "met with Jed York" and how "everything was changing." Mr. Rodriguez informed Plaintiff and the other security officers that "Jed is going around Silicon Valley hiring the best talent" for the security department. Mr. Rodriguez advised Plaintiff and the other security officers that "we're going to get some young men out of the police academies to help us at the Santa Clara headquarters." Mr. Rodriguez explained that the security department was "going in a new direction" and they were looking to hire young police recruits straight out of the academies. Mr. Rodriguez informed his staff that Mr. York had hired a young security director from the United Kingdom to replace Mr. Formosa, and that "the security department would grow, and there would be more shifts, and more opportunities."

13. Mr. Rodriguez concluded the meeting by informing Plaintiff and the other security officers, "Many people in this Niners Headquarters building, including some of you, will not be invited across the street."

14. At the time of the meeting, there were approximately 12 to 14 security officers that worked for Defendant 49ers. More than 80 percent of the security officers were over the age of 40 years old. Several of the security officers were in their 60s, 70s, and 80s.

15. Over the course of the next two years, Defendant slowly eliminated almost the entire security department staff. Virtually all of the security officers over the age of 40 years old were terminated from their positions, and almost none were invited to work in the new stadium.

16. During this period of time, Plaintiff is informed and believes that Defendant San Francisco 49ers engaged in a pattern and practice of eliminating their older workers, while attempting to rebrand the team as a younger, technology driven organization.

17. In 2010, Jed York, the CEO of the 49ers, was actively looking for additional revenue streams for the 49ers, including making attempts to move the San Francisco 49ers to a new stadium in Silicon Valley, so that the 49ers could be rebranded as a team within the NFL that

-4-

was "technology" driven.  As part of that strategy, York hired Gideon Yu, a former executive at Facebook, YouTube, and Yahoo.  Mr. York hired Mr. Yu as the 49ers' Chief Strategy Officer, and, in April 2011, York informed the employees that Mr. Yu would be working closely with him to re-brand the 49ers as a technology "startup" within the NFL, so that they could achieve their objective of moving the 49ers to a new stadium in Silicon Valley.  When Mr. Yu arrived for work at the 49ers, he openly referred to the older workers as "legacy employees," a discriminatory term used to describe older employees in Silicon Valley.

18.     As part of that technology strategy, in December 2012, Mr. York openly admitted that he wanted to hire the predominantly younger technology workers from the neighboring Silicon Valley technology companies.  When asked why the 49ers wanted to hire these young technology workers, York said, "Because they made a lot of money, they did a lot of cool things before they turned 40 years old, and they don't want to go play golf six days a week."  As a result, York and his staff engaged in an active strategy to quietly recruit younger technology workers to join the management and senior leadership ranks of the 49ers.

19.     In order to make room for the younger technology workers, York engaged in a campaign to terminate the older, senior employees within the 49ers organization.  For example, York and his senior management staff made disparaging remarks about older workers, made active attempts to eliminate his older management staff, including repeated violations of the Older Worker's Benefit Protection Act, and actively recruited younger employees to replace what he perceived to be an aging staff.

20.     After being ignored in the workplace for several months, Plaintiff was terminated from his employment as a security officer in May 2014.

21.     After his termination, Plaintiff was informed that Defendant had eliminated all of its game-day ushers.  The vast majority of the ushers were between the ages of 50 to 85 years old.  Plaintiff was advised that he could apply for an usher position at Levi Stadium, by attending an interview at the Santa Clara Convention Center, as all of the older ushers had been terminated.

22.     In June 2014, Plaintiff applied for the position of usher.  During the interview, he was asked a series of discriminatory questions, including, "What year did you graduate high

school?" and, "At what age do you think ushers should retire?" Plaintiff provided answers to each of these questions. Plaintiff was not selected for the position, as a direct result of his age.

23.     Plaintiff was 52 years old at the time of the adverse actions.

### FIRST CAUSE OF ACTION

**(Violations of the ADEA – Defendant San Francisco 49ers and DOES 1 to 10)**

24.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 23 of this Complaint as though fully set forth herein.

25.     The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq., prohibits an employer from discriminating in the terms and conditions of employment based upon the fact that an employee is over the age of 40 years old.

26.     Defendant San Francisco 49es violated the ADEA with regard to Plaintiff when it discriminated against Plaintiff on the basis of age, failed to hire Plaintiff, and terminated Plaintiff's employment because of the fact that Plaintiff is over the age of 40 years old.

27.     Defendant's conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of the ADEA.

28.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial. Plaintiff also seek the equitable remedy of reinstatement to his former position.

29.     Defendant's conduct is properly characterized as "willful" under the ADEA, and, as a result, Defendant is liable for liquidated damages.

### SECOND CAUSE OF ACTION

**(Violations of FEHA – Defendant San Francisco 49ers and DOES 1 to 10)**

30.     Plaintiffs incorporate herein by reference all of the allegations contained in paragraphs 1 through 29 of this Complaint as fully set forth herein.

31.     California Government Code § 12940 prohibits an employer from discriminating against workers over the age of 40 years old, in the terms and conditions of employment.

32. Defendant 49ers violated California Government Code § 12940 when it engaged in discriminatory practices, as alleged above, based upon the fact that Plaintiff was an older worker over the age of 40 years.

33. As a direct and proximate result of Defendant's discriminatory acts, Plaintiff has suffered loss of employment opportunities, loss of dignity, great humiliation, and emotional injuries manifesting in physical illness and emotional distress.

34. Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, costs of suit, embarrassment and anguish, in an amount according to proof.

35. The acts of the Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs and to cause mental anguish, anxiety, and emotional distress. The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant. The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiffs and with the intent to injure Plaintiffs, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

### THIRD CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy – Defendant San Francisco 49ers and DOES 1 to 10)**

36. Plaintiffs incorporate herein by reference all of the allegations contained in paragraphs 1 through 35 of this Complaint as fully set forth herein.

37. It is the fundamental public policy of the State of California that employers, like the 49ers, shall not discriminate against employees on the basis of age, including the fact that Plaintiff is over the age of 40 years. These fundamental public policies are embodied in the California Fair Employment and Housing Act, Government Code §§ 12940, et. seq., and the ADEA and OWBPA. These public policies of the State of California were substantial, fundamental, and well established at the time the Plaintiffs were terminated.

38.     In acting as alleged herein, Defendant wrongfully terminated Plaintiff in violation of these public policies.

39.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

40.     Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, in an amount according to proof.

41.     The acts of the Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause mental anguish, anxiety, and emotional distress.  The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant.  The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling plaintiff to punitive damages.

///
///
///
///
///
///
///
///
///
///
///
///

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them as follows:

1.  For general damages in an amount according to proof;

2.  For special damages in an amount according to proof;

3.  For prejudgment interest in an amount according to proof;

4.  For punitive damages in an amount according to proof;

5.  For equitable and/or injunctive relief;

6.  For statutory penalties, including liquidated damages;

7.  For reasonable attorney's fees and cost of suit therein;

8.  For such other and further relief as the court may deem proper.

9.  **Plaintiffs demand a trial by jury**.

Dated:  March 20, 2015                    BROWN | POORE LLP


                                          By:___//s// David M. Poore_____
                                              David M. Poore
                                              Attorneys for Plaintiffs